**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

CASE NO. 18-24707-CIV-GRAHAM/MCALILEY

MATHIAS V. MALAK,

    Plaintiff,
v.

STRATEGIC ARMORY CORPS, LLC,
a Delaware Limited Liability Company,

    Defendant.
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S**
**AMENDED MOTION TO SET ASIDE ENTRY OF DEFAULT**

Plaintiff, Mathias Malak ("Mr. Malak"), responds in opposition to the Amended Motion to Set Aside Entry of Default filed by Defendant, Strategic Armory Corps, LLC ("Defendant") [DE 14], and in support states:

**BACKGROUND**

As Defendant acknowledges, the parties engaged in settlement negotiations for months prior to Mr. Malak commencing this action. Thereafter, on November 7, 2018, counsel for Mr. Malak sent a letter to Defendant's counsel of record, providing notice of Mr. Malak's intention of bringing an action against Defendant under Florida's Minimum Wage Act. A copy of the email correspondence, attaching the November 7, 2018 letter is attached as **Exhibit "A."** In the email, undersigned reiterated Mr. Malak's intention of moving forward with his claim. *Id*. ("Our Complaint will follow shortly."). However, on that same day, because undersigned received an automated message that counsel was out of the office, undersigned, in an abundance of caution, forwarded the email and letter to three attorneys in counsel's firm requesting that they please pass along the correspondence to Defendant in light of counsel's absence. *See id*. On November

9, 2018, Mr. Malak filed his original complaint and undersigned counsel, that same day, forwarded a copy of the original complaint to Defendant's counsel as well as the proper request to waive service. *See* the November 9, 2018 correspondence, which is attached as **Exhibit "B"**; *see also* [DE12-1]. Accordingly, as expressed in the request for waiver, Defendant had thirty (30) days (until December 10, 2018) [1] to return the waiver of service if it chose to waive service. [DE 12-1].

On November 15, 2018, because Defendant's counsel did not respond to the above correspondence, undersigned counsel sent additional correspondence to counsel requesting that it confirm whether or not she still represented Defendant in order to determine whether the request for waiver of service needed to be sent directly to Defendant. Ex. B. On November 19, 2018, Defendant's counsel responded confirming her continued representation of Defendant and, despite having already received a copy of the original complaint and request for waiver of service, Defendant's counsel represented that the undersigned could send the request for waiver directly to counsel. *Id*. Accordingly, on that same day, November 19, 2018, undersigned resent a copy of the original complaint and request for waiver of service to Defendant's counsel, reminding her that the request for waiver had previously been sent on November 9, 2018. *Id*. On November 20, 2018, the undersigned forwarded a copy of the Court's Notice of Court Practice in FLSA Cases [DE 3]. *Id*. On December 10, 2018, despite being in receipt of a copy of the original complaint and the waiver of service, Defendant did not elect to waive service by the deadline. [DE 12-1].

On December 13, 2018, Mr. Malak filed his Amended Complaint (the "Complaint"), adding a claim under Florida's Minimum Wage Act, the claim that Mr. Malak, in the November 7th correspondence, informed Defendant that he intended on pursuing. [DE 12-2]. Because

---

[1] Thirty days from November 9, 2018 fell on December 9, 2018, a Sunday.

Defendant did not elect to waive service previously, Mr. Malak elected to serve Defendant with the Summons and Complaint by process server. On December 18, 2019, Defendant was served with the Summons and Complaint through its registered agent located in Defendant's home state of Arizona. [DE 8]. Defendant was required to respond to the Complaint by January 8, 2019, but failed to do so.

On January 9, 2019, Mr. Malak filed a Motion for Entry of Clerk's Default [DE 9] and undersigned served Defendant, through email to its counsel, with a copy of the Motion for Default. A copy of the service email is attached as **Exhibit "C."** On January 10, 2019, the Clerk of Court entered a default against Defendant. [DE 11]. Accordingly, on January 12, 2019, undersigned served Defendant with a copy of the Clerk's Default. A copy of the service email is attached as **Exhibit "D."** Despite (i) the parties' months of negotiations prior to the commencement of this action, (ii) undersigns numerous communications to Defendant's counsel regarding the *pending* action, (iii) counsel's receipt of the original complaint and request for waiver, and (iv) Defendant being properly served in its home state (a fact Defendant does not contest), Defendant – after two months of inactivity and silence after being notified of the commencement of this action – claims that this Court should set aside the entry of default.

Specifically, Defendant claims that it failed to respond to the Complaint because its registered agent, who was properly served in Defendant's home state of Arizona, inadvertently sent the Summons and Complaint to the personal attorney of Defendant's former owner. [DE 14-1 at ¶31]. Significantly, despite the purported inadvertence of its registered agent, Defendant did not provide an affidavit or declaration from its registered agent detailing how the alleged mistake in forwarding the Summons and Complaint occurred and when the inadvertence actually occurred. Nor did Defendant provide an affidavit or declaration of the personal attorney for the

former owner explaining when he or she received the Summons and Complaint and why he or she failed to forward them to Defendant upon learning of the mistake. Moreover, despite counsel's knowledge that Mr. Malak commenced this action and was attempting to serve Defendant, Defendant does not present evidence that it made any effort to contact its registered agent to inquire about whether it had been served or took steps to ensure that the Summons and Complaint were properly forwarded to it if and when it was served.

Despite the absence of details surrounding the registered agent's purported inadvertence and the personal attorney's failure to forward the Summons and Complaint to Defendant so that it could file its response within the twenty-one (21) day period, Defendant now seeks to set aside the entry of default. For the reasons discussed below, Defendant's Amended Motion to Set Aside Entry of Default [DE 14] should be denied.

## ARGUMENT

### I. Defendant Fails to Establish Good Cause Sufficient to Set Aside the Default

A default may be set aside for "good cause," which is a "mutable standard, varying from situation to situation." *World Atl. Airlines v. Dynamic Int'l Airways, LLC*, 2017 WL 3107193, at *1 (S.D. Fla. Mar. 22, 2017) (internal quotations omitted). To determine whether a party has shown good cause, courts commonly consider: (1) whether default was culpable or willful; (2) whether defaulting party presents a meritorious defense; and (3) whether setting aside default would prejudice the non-moving party. *Id*.

#### a. Defendant's Failure to Establish Procedural Safeguards Precludes Relief

Notwithstanding that Defendant's counsel was aware that Mr. Malak commenced this action, Defendant's implication that it's conduct was not culpable or willful due to the mistake or inadvertence of its registered agent (and/or the former owner's personal attorney) is not sufficient to avoid an entry of default. "Default that is caused by the movant's failure to establish

minimum procedural safeguards for determining that action in response to a summons and complaint is being taken does not constitute default through excusable neglect." *Hensel Phelps Const. Co. v. Drywall Sys. Inc. of S. Florida*, 2007 WL 2433839, at *3 (S.D. Fla. Aug. 22, 2007) (quoting *Gibbs v. Air Canada*, 810 F.2d 1529, 1537 (11th Cir. 1987)); *see Baez v. S.S. Kresge Co.*, 518 F.2d 349 (5th Cir.1975). Although *Air Canada* and its progeny largely pertain to default judgment and not default, courts have held that the *Air Canada* line of cases apply to defaults and the "good cause" analysis under Rule 55(c). *See Qualink, Inc. v. C.P. Motion, Inc.*, 2009 WL 10668988, at *3 (S.D. Fla. Sept. 22, 2009) (citing favorably to *Air Canda* and applying it "good cause" analysis under Rule 55(c)); *Heaton v. Bonacker & Leigh*, 173 F.R.D. 533, 536 (M.D. Ala. 1997) ("Even though these cases largely concern default judgment, the court is persuaded that the *Air Canada* line of cases should apply here.").

The facts in *Hensel* are strikingly similar to those in this case. In *Hensel*, the defendant was properly served through its registered agent but alleged that it was not aware of the action until after the default and final judgment were entered. *Hensel*, 2007 WL 2433839, at *2. Defendant claimed that it failed to respond because its registered agent allegedly failed to promptly notify defendant of the action because when the registered agent finally sent the summons and complaint, it was allegedly rerouted to an offsite warehouse by defendant's landlord, who allegedly failed to relay to defendant that the package was rerouted. *Id*.

Despite defendant's allegations regarding its registered agent's delay and its landlord's failure to relay the package, the court found defendant's excuses unavailing. *Id*. Specifically, the court found that it was defendant's failure to establish sufficient minimum procedural measures to ensure that the process was properly forwarded to defendant and/or identified. *Id*. at *3. The court found it significant that defendant did not present any evidence to establish that defendant

had any minimum procedural safeguards in place or that any procedural safeguards were violated by defendant's registered agent. *Id*. Moreover, the court strongly noted that, despite defendant's excuses with respect to its registered agent, defendant did not present an affidavit or declaration from the registered agent regarding how the alleged delay in forwarding the complaint actually occurred. *Id*. at *2.

In this action, like the defendant in *Hensel*, Defendant's registered agent's inadvertence, and the personal attorney's presumable failure to relay the Summons and Complaint to Defendant, is not sufficient to support setting aside the default. Defendant does not present any evidence that, despite being aware that this action was pending and that Mr. Malak requested a waiver of service from Defendant, it established sufficient minimum safeguards to ensure that the Summons and Complaint were properly forwarded to it. Nor does it provide any evidence that its registered agent breached any safeguards. Defendant could have contacted its registered agent, but it did not, when it knew Mr. Malak's complaint was filed to ensure that if and when the registered agent was served, the summons and complaint would be properly forwarded to Defendant. Additionally, like the defendant in *Hensel*, Defendant fails to provide an affidavit or declaration of its registered agent explaining the purported error and it also does not provide anything from the personal attorney explaining why the Summons and Complaint were not sent to Defendant. Accordingly, the reason for Defendant's failure to respond to the Amended Complaint is not due to its registered agent, but rather is due solely to Defendant's failure to implement sufficient minimum safeguards. Therefore, Defendant fails to show good cause to set aside the default.

### b. Defendant Failed to Provide a Meritorious Defense to Support Setting Aside the Default

#### i. Defendant's personal jurisdiction defense is devoid of merit because Defendant is subject to personal jurisdiction in Florida

Although the moving party need only provide "a hint of a suggestion" that its defense has merit, and is not required to show the likelihood of success of the defense, the moving party is still required to show that its defense is meritorious nonetheless. *Grille 54, LLC v. Grille 54--Sheldon, LLC*, 2015 WL 3867009, at *3 (M.D. Fla. June 23, 2015). In other words, despite the lower standard, the moving party's alleged defense is insufficient to support setting aside a default if it is shown that the defense is entirely "devoid of merit." *See Griffin IT Media, Inc. v. Intelligentz Corp.*, 2008 WL 162754, at *3 (S.D. Fla. Jan. 16, 2008) ("[T]he Court's review at this juncture is limited to an inquiry of whether Defendant's allegations are entirely devoid of merit."). Accordingly, a lack of personal jurisdiction defense is devoid of merit and insufficient to support setting aside a default, if the record clearly shows that the moving party is subject to personal jurisdiction in the forum. *See Loop Prod. v. Capital Connections LLC*, 797 F. Supp. 2d 338, 346–47 (S.D.N.Y. 2011); *Trachtman v. T. M. S. Realty & Fin. Services*, 393 F. Supp. 1342, 1347 (E.D. Pa. 1975). The record in this case, including Defendant's own representations and admissions, sufficiently demonstrates a basis for the Court to assert personal jurisdiction over Defendant and, therefore, Defendant's defense on this basis is devoid of merit and does not support setting aside the default.

Florida court's undertake a two-part analysis to determine whether the court has personal jurisdiction over a nonresident defendant. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996). First, the court must determine whether Florida's long-arm statute provides a basis for personal jurisdiction. *Id*. If so, then the Court must determine whether sufficient

minimum contacts exist between the defendant and the forum state to satisfy Due Process concerns. *Id*.

The record shows that personal jurisdiction over Defendant is proper under Florida's long-arm statute. Section 48.193(1)(a)(7), Fla. Stat. "provides for personal jurisdiction in Florida if the party 'breached a contract in this state by failing to perform acts required to by the contract to be performed in the state.'" *Le v. Tralongo, LLC*, 239 So. 3d 704, 706 (Fla. 4th DCA 2018) (quoting § 48.193(1)(a)(7), Fla. Stat. (2016)). Under Florida law, when an agreement is silent as to where a party is required to provide compensation in accordance with its obligation under an agreement, courts will look to the parties' course of dealing to fill in gaps in the express terms of the agreement. *Id*.

Here, the parties' course of dealing establishes that Defendant always compensated Mr. Malak, pursuant to its obligations under the Shooter Agreement, by sending the rounds of ammunition and checks for expense reimbursements and other monies owed under the Agreement directly to Mr. Malak in Florida. *See* Declaration of Jeremy Gresham at ¶¶ 13-15, which is attached as **Exhibit "E."** Accordingly, Defendant's breach of the Shooter Agreement by failing to continue to send the agreed upon rounds of ammunition directly to Mr. Malak in Florida, as compensation under the Agreement, falls squarely within the scope of section 48.193(1)(a)(7). *See Tralongo*, 239 So. 3d at 706 (holding jurisdiction was proper under § 48.193(1)(a)(7), where, despite the agreement's silence as to where defendant would make payment, the parties' course of dealing showed that past payments made under the agreement were made directly to plaintiff in Florida); *Stomar, Inc. v. Lucky Seven Riverboat Co., L.L.C.*, 821 So. 2d 1183, 1185-86 (Fla. 4th DCA 2002) (holding defendant fell within Florida's long-arm statute, where defendant engaged plaintiff to market and negotiate the sale of its boat in Florida

and then subsequently breached the agreement by failing to pay the commissioned owed to plaintiff in Florida).

The record also shows that Defendant has sufficient minimum contacts with Florida. The "touchstone of the minimum contacts analysis is whether 'the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *Ben M. Hogan Co., Inc. v. QDA Inv. Corp.*, 570 So. 2d 1349, 1350 (Fla. 3d DCA 1990) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). "Prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Id*. (quoting *Burger King*, 471 U.S. at 479).

Here, Defendant's contacts with Florida go beyond merely providing a payment in Florida for Mr. Malak's services. Defendant formed a business relationship with Mr. Malak in Florida for purposes of having Mr. Malak attend and participate in numerous events, including those in Florida, on behalf and in support of the Defendant, "promote and use" the Defendant's products at these Florida events, and to assist the Defendant with its "marketing efforts." *See* Ex. E at ¶¶ 5-8; [DE 12-3 at section 2]; [DE 14-1 at ¶ 10]. Additionally, Defendant, through a number of its personnel, frequented a number of these events in Florida. *See* Ex. E at ¶ 17. Moreover, in addition to Mr. Malak promoting Defendant's products all throughout the state, Defendant also provided several of its products to suppliers located in Florida. *Id*. Thus, Defendant availed itself of the privilege of conducting business activities in Florida through Mr. Malak and, therefore, has sufficient minimum contacts in Florida to satisfy Due Process concerns. *See Lucky Seven*, 821 So. 2d at 1187 (reversing trial court's order dismissing defendant based on personal jurisdiction, and finding that defendant had sufficient minimum contacts with

the state because it purposefully availed itself of the privilege of conducting business activities in Florida, where, in addition to defendant's obligation to make payment in Florida, is also hired plaintiff to market and negotiate the sale of its boat in Florida); *QDA*, 570 So. 2d at 1351 (affirming trial court's finding that defendant, who engaged plaintiff to obtain investors in Florida and "outside of Florida," had sufficient minimum contacts with Florida, where, despite that a great majority of plaintiff's solicitations were conducted outside of Florida (eight out of eleven), plaintiff performed its work in Florida and received payment in Florida).

Accordingly, because the record establishes that Defendant's conduct is such that it is subject to personal jurisdiction in Florida, Defendant's personal jurisdiction defense is meritless and, therefore, does not warrant setting aside the default. *Loop Prod.*, 797 F. Supp. 2d at 346–47 (finding defendants' personal jurisdiction defense was meritless because the uncontroverted allegations sufficiently demonstrated the court's personal jurisdiction over defendants and therefore denying defendants' motion to vacate entry of default); *Trachtman*, 393 F. Supp. at 1347 (same).

### ii. Defendant Fails to Establish That Its Remaining Defenses are Meritorious

"It is well settled that general denials and conclusive statements are insufficient to establish a meritorious defense; the movant must present a factual basis for its claim." *Turner Broad. Sys., Inc. v. Sanyo Elec., Inc.*, 33 B.R. 996, 1002 (N.D. Ga. 1983); *see Griffin*, 2008 WL 162754, at *3 (finding that defendant provided a "clear and specific statement showing, not by conclusion, but by definite recitation of facts" that it had a colorable defense.); *Grille*, 2015 WL 3867009, at *3 (finding defendants did more than "generally allege" a meritorious defense, but rather "stated specific facts," which they believe make their contentions more meritorious than Plaintiff's claims).

Here, Defendant merely presented a list of defenses with boilerplate, conclusory allegations. *See* [DE 14 at 13-15]. None of Defendant's listed defenses contain a single "specific fact" showing that Defendant's defenses are at least colorable. *See id*. Defendant's list of boilerplate defenses are much like the defendant's "series of conclusory defenses" in *Rolyn*. In *Rolyn,* despite dealing with vacatur under Rule 60(b) and the heightened meritorious defense standard, the court found that "none of the[] defenses can seriously be said to contain facts, much less a 'definite recitation' of them. They are conclusions, offered 'at the highest order of abstraction' and, therefore were insufficient to establish a meritorious defense. *See Rolyn Companies, Inc. v. R & J Sales of Texas, Inc.*, 2009 WL 10667734, at *3 (S.D. Fla. July 30, 2009) (quoting *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1296 (11th Cir. 2003)). Similar to the defendant in *Rolyn*, because Defendant's list of boilerplate defenses are supported by nothing more than conclusory allegations – and not facts – Defendant has failed to provide even "a hint of a suggestion" that her defenses have merit. Therefore, Defendant's failure to present any meritorious defenses precludes setting aside the default.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendant's Amended Motion to Set Aside Entry of Default. Not only was Defendant aware of Plaintiff's intention to commence this action, it was also aware of the action after it commenced and received numerous filings and correspondence from Mr. Malak's counsel while this action was pending. Defendant's failure to implement procedural safeguards, or at least contact its register agent to inquire about the action it knew was pending, shows a lack of good cause precluding relief. Finally, Defendant failed to present a meritorious defense. The record clearly shows that Defendant is subject to personal jurisdiction in Florida, and the remainder of Defendant's conclusory defenses fail to include any facts and are entirely devoid of merit.

Dated this 30th day of January, 2019.

> */s/J. Anthony Nelson*
> J. ANTHONY NELSON
> Florida Bar No. 126351
> Primary Email: jnelson@gunster.com
> Secondary Email: mjadotte@gunster.com
> Secondary Email: eservice@gunster.com
> **GUNSTER, YOAKLEY & STEWART, P.A.**
> 777 S. Flagler Drive, Suite 500 East
> West Palm Beach, FL 33401
> Telephone:  561-655-1980
> Facsimile:  561-655-5677
> *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on January 30, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

> */s/J. Anthony Nelson*
> J. ANTHONY NELSON

MIA_ACTIVE 4862817.1